Messrs. Kline, Carr, Tolles & Goff, for Defendant.

---

(Superior Court of Cincinnati.)
Special Term, 1901.

---

EDWARD COLSTON, executor, et al. v. FRANK S. HASTINGS, assignee.

---

1. The act of January 12, 1824, regulated the rate of interest allowed on all contracts entered into between April 1, 1859, the date when the repeal of the "Ten Per Cent. Law" became effective, and October 1, 1869, when the "Eight Per Cent. Law" went into operation.

2. Said act of January 12, 1824, limited the rate of interest permitted to be taken to six per cent. per annum and no more, and this limitation affected the provisions of a contract before maturity as well as after maturity.

3. There is a distinction between the implied repeal of an act general in its provisions, and the introduction of an exception to such general provisions. A subsequent act repealing such exceptions leaves the general provisions of the original act in full force without any re-enactment thereof.

4. The act of February 18, 1848, sec. 3183, R.S., requires that "all excess of interest above the rate allowed by law at the time of making the contract," shall be credited upon the principal. On July 18, 1867, a note was given by A to B expressly calling for 8 per cent interest, and interest at that rate was paid on said note up to July 18, 1893. Held in an action upon said note: That A is entitled to have credited upon the principal of said note, the amount of interest yearly paid in excess of 6 per cent. Samyn v. Phillips, 15 Ohio St., 218; Mueller v. McGregor, 28 Ohio St., 265; and Andrews v. Campbell, 36 Ohio St., 361, distinguished.

5. Said act of February 18, 1848, permits excess of interest to be applied as a credit by any way of off-set, but does not grant the right to recover it back.

---

DEMPSEY, J.

On July 18, 1867, Russell, Stites & Co., a firm, and Charles F. Stites, individually, gave their joint promissory note to A. J. Ferris, C K. Ferris and Joseph Ferris, as joint payees, for the sum of $2,505, payable in three months after that date, with 8 per cent. interest. It appears from indorsements on the note that the interest thereon was regularly paid up to July 18, 1893. No question is made as to the right of the plaintiffs to sue. On April 7, 1897, Charles F. Stites made an assignment to Frank S. Hastings, in trust for the benefit of his creditors. Hastings duly qualified. On the 14th day of June, 1897, there was still due on this note the principal thereof, and $782.50 as interest thereon; on June 15, 1897, plaintiffs made proper presentation of their claim under said note to said Hastings, as assignee, but said assignee refused to allow the same as a claim against Stites' assigned estate. Plaintiffs, therefore, ask for a judgment against said assignee for the sum of $2 505 as principal, for $782.50 as interest thereon to June 14, 1897, and for interest accruing from June 14, 1897, at the rate of 8 per centum.

Defendant's answer avers that the interest payments indorsed on said note were made by Charles F. Stites individually, and that said notes and the payments thereon in excess of 6 per cent. were usurious; he also pleads a release; and then, by way of cross-petition, counter-claims against the plaintiffs for a recovery of the excess interest paid, after the obligation on the note with 6 per cent. interest has been liquidated, and which excess he claims amounts to $469.27.

A reply was filed to this answer and counter-claim. It was agreed on the hearing that there was no question about plaintiffs' title to the note; that 8 per cent. interest was regularly paid upon the note; that the release pleaded in the

answer was not to be pressed; but that defendant would insist upon a recovery of excess payments claimed to have been made by mistake.

The defense to any recovery at all by plaintiffs is based by the defendant on a contention that the agreement to pay 8 per cent. interest was in contravention of the statute regulating interest, and that Stites is, therefore, entitled to a credit upon the principal, from year to year, of all sums paid as interest in excess of the 6 per cent. rate; that if an account be cast between the parties treating this alleged excess interest as partial payments upon the principal, the principal will be more than liquidated, and that there will be still an excess payment, which, under his counter-claim, defendant may recover.

But first as to the defense, which will necessitate a brief history of Ohio legislation on the subject of interest. The first act passed was that of December 29, 1804, which is material here only as it sheds some light on the construction placed by the supreme court upon the subsequent act of January 12, 1824, which was the next in order of time. This act, which took effect June 1 1824, provided that "all creditors shall be entitled to receive interest on all money, after the same shall become due, either on bond, bill, promissory note, or other instrument of writing, or contracts for money or property; on all balances due on settlement between parties thereto, or money withheld by unreasonable and vexatious delay of payment; and on all judgments obtained from the date thereof, and on all decrees obtained in any court of chancery for the payment of money from the day specified in the said decree for the payment thereof, until such debt, money or property is paid, at the rate of 6 per ent. per annum and no more'; and it repealed the act of December 29, 1804.

On the 14th of March, 1850, was passed an act, to take effect May 1, 1850, and which was entitled an act to amend the interest act of January 12, 1824, and all the other laws on that subject, and which provided: (1) "That the parties to any bond, bill, promissory note, or other instrument of writing for the payment or forbearance of money, may stipulate therein for interest receivable upon the amount of such bond, bill, note or other instrument, at any rate not exceeding 10 per centum yearly; provided, however, that no incorporated banking institution of this state shall be entitled to receive more than the rate of interest specified in its charter, or if no rate be specified, more than 6 per centum yearly upon any loan or discount whatsoever; and (2) that upon all judgments rendered upon any bond, bill, promissory note or other instrument aforesaid, interest shall be com-

puted till payment, at the rate specified in such bond, bill, note or other instrument, not exceeding 10 per centum, as aforesaid; or, in case no rate of interest be specified, at 6 per centum yearly."

This act of 1850 was known as "The ten per cent act" and was repealed February 25, 1859, the repealing act to take effect April, 1859. The operation of this repealing act was modified by an additional act passed March 31, 1859, which saved from its operation all contracts then existing, or that might be made before the repealing act took effect, and all judgments rendered upon such contracts. Then came the act of May 4, 1869, which, in section 5, expressly repealed the act of January 12, 1824, and in section 6 provided that its own operation should date from October 1, 1869.

Section 1 of this act provided that the parties to any bond, bill, promissory note or other instrument of writing, or the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount of such bond, bill, note or other instrument of writing, at any rate not exceeding 8 per centum per annum, payable annually. Section 2 relates to judgments and decrees. Section 3 provided that in all cases other than those provided for in the first and second sections, when money shall become due and payable upon any bond, bill, note or other instrument of writing, bearing date after the passage of this act, upon any book account or settlement hereafter made between parties, upon all verbal contracts hereafter entered into and upon all judgments, decrees and orders of any judicial tribunal for the payment of money arising out of any contract or other transaction occurring after the passage of this act, the creditor or creditors shall be entitled to interest at the rate of 6 per cent. per annum, and no more. Section 4 provided that all creditors shall be entitled to collect and receive interest on all bonds, bills, notes and other written instruments heretofore entered into, upon all balances struck on settlements heretofore made, upon book accounts heretofore accrued, upon all verbal contracts heretofore made and upon all judgments, decrees and orders of court heretofoer rendered, precisely as if the act had not been passed. The act of 1869 is practically the provisions now embodied in sections 3179 to 3182 inclusive, of the Revised Statutes. It will be remembered that the note in controversy here bore date July 18, 1867, and matured in three months, both dates being antecedent to the act of 1869, and long after the repeal of "the ten per cent. law."

So these facts bring the act of 1824 to the fore, as the first contention between the parties. It is claimed by the plaint-

iff in regard to the act of 1824, first, that conceding it might apply to the case, if the facts warranted it, yet under the facts as they are, the act has no application, for it prescribes no rate of interest on a contract prior to the maturity of the debt; it only fixes the rate after maturity, and allows the parties to make any rate they please prior to maturity that is not unconscionable.

A rather plausible argument is entered upon by counsel in support of this position. But the question is not new, for it was raised in Reddish v. Watson, 6 O. R. 510, and, by a divided court, resolved in favor of the position assumed by counsel in this case. The identical question came again before the supreme court in Lafayette Benefit Society v. Lewis, 7 O. (part first), 80, and, by a divided court again, Reddish v. Watson, supra, was overruled, and the act of 1824 was held to fix the rate of interest allowable as well before maturity as afterward. This conclusion is reached by a comparison of the act with that of 1804. And the 7 Ohio case is referred to in Bank v. Swayne, 8 O. R., at page 281, as finally and definitely setting the construction of the act of 1824, and this construction is against the contention of plaintiff.

But the plaintiff contends that so much of the act of 1824 as is specifically provided for in the ten per cent. act of 1850, viz.: those provisions relating to bonds, bills, promissory notes and instruments in writing, was repealed by implication by said latter act, and that when that act was in turn repealed, the impliedly repealed provisions of the act of 1824 were not thereby revived. I do not agree with this argument. I think the principle underlying the case of Wagner, 1 D. 10, decided by Judge Gholson, is applicable here. The act of 1824 was intended to establish and fix a general rule; the act of 1850 provided for an exception to that general rule; when the exception was repealed, it left the old rule in force without any reviving act, and a reviving act was not necessary.

It is further contended by plaintiff that supposing the act of 1824 was in no respect affected by the act of 1850, and that after the repeal of the act of 1850, 6 per cent. was the maximum rate allowed by law until October 1, 1869, yet under the authority of Samyn v. Phillips, 15 Ohio St., 218, Mueller v. McGregor, 28 Ohio St, 265, and Andrews v. Campbell, 36 Ohio St, 361, all sums actually paid by way of interest on the debt in question in this case after October 1, 1869, at the rate of 8 per cent. per annum, were legal, and that the only deduction by way of usurious excess that can be allowed would be on payments made from October 21, 1867, the maturity of the note, and October 1, 1869, the date when the law went into effect.

In Samyn v. Phillips, supra, where during the existence of the ten per cent. law certain notes contained no stipulation as to a special rate of interest, and yet after the maturity of the notes payments of interest thereon were made at the rate of 10 per cent., such payments as were made prior to the repeal of the ten per cent. law were allowed to stand as payments of interest only, but those made subsequent to such repeal were as to the excess credited on the principal.

At page 224 the court says:

"In the case before us there is no evidence of any contract for the payment of interest at a special rate after the maturity of the debt, except the fact that such payments were, from time to time, made. Though such payments could not have been enforced for want of a contract evidenced as the statute required, yet so long as it was in the power of the parties to make such a contract valid by express stipulation, it was equally in their power to make it valid by actual execution."

This decision was followed in Mueller v. McGregor, and in Andrews v. Campbell, supra. Now, the act of 1848, since codified as section 3183 of the Revised Statutes, provides that "payments of money or property made by way of usurious interest, whether made in advance or not, shall be deemed and taken, as to the excess of interest above the rate allowed by law at the time of making the contract, to be payments made on account of principal; and judgment shall be rendered for no more than the balance found due, after deducting the excess of interest so paid."

Section 4 of the act of 1869, now section 3182, Revised Statutes, provides, as will be remembered, that the right to collect interest on existing obligations shall be precisely as if the act had not been passed; so that the right to collect interest and the amount thereof in the case of the note at bar, will be regulated by the act of 1824, unless the principle of Samyn v. Phillips, supra, should control this case. Now, in each one of the three cases cited above, it will be noticed that the contract or obligation, out of which the interest was to arise, was entered into while the ten per cent. law was in force, and it will further be noticed, in each case, that the principal obligation contained no stipulation as to interest whatever; that is, that it should draw interest at any rate.

In the case at bar, the note was not made during the existence of the eight per cent. act; it was signed and delivered while the 1824 act was in force; and again, it provides for 8 per cent. interest, a rate in excess of the rate prescribed by the 1824 act. Now, while it

is perfectly true that under our statutes usury does not forfeit or annul the obligation, still the effect of the interest statute is to read into the contract, in substitution for the usurious rate, the rate prescribed by the statute, and to permit the recovery of no more than the statutory rate. And the policy of section 3183 seems to be that so long as the particular contract remains in esse, the rights of the parties as to interest and credits for excessive interest shall be governed by the "law at the time of making the contract." In no other way can this phrase be made operative, and it seems to me that the supreme court had this in view in the Samyn-Phillips case, for they quote this provision in extenso, and follow it by the reasoning hereinbefore quoted.

It follows from this that, in my judgment, the defendant is entitled to a credit on the principal for each excess of interest over 6 per cent. paid by Stites, and that the balance due, if any, must be ascertained by a casting of the account, and an application of credits and payments, under the rules as laid down in Anketel v. Converse, 17 Ohio St., 11.

Defendant claims that on a recasting of the account it will be found that $469.27 was paid to plaintiff's decedent in excess of the amount of the note and legal interest, an that he is entitled to recover that back, because it is claimed it was paid by mistake.

It seems to be conceded that usurious interest voluntarily paid can not be recovered back (Williamson v. Cole, 26 Ohio St., 207; Mallon v. Munson, 2 H. 97); and relief is sought to be obtained on the ground of mistake, under West v. Meddock, 16 Ohio St., 417. That case establishes the doctrine that usury paid by mistake may be recovered back. But the existence of a mistake, as well said by counsel for plaintiff, is essential to a recovery. Of course a mistake of law, as, for instance, ignorance by Stites of his rights under this note and the payments thereon, would not avail defendant and a careful examination of the evidence satisfies me that there was no mistake of fact in the dealings between Stites and the Ferris people.

Under the views expressed herein, and whatever the calculation may show, the utmost relief that defendant may have herein is a judgment dismissing plaintiff's petition. If the caculation shows a balance due plaintiffs, a judgment will be entered in their behaf. The judgment will be in accordance with the result of the calculation, which counsel may agree upon, or a master be appointed to make.

Edward Colston and Spotswood D. Bowers for Plaintiff; F. S. Hastings and A. E. Painter for Defendant.